**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH W. FARMER,** | : | **Civil No. 4:09-CV-166** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Conaboy)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CATHERINE C. McVEY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

#### A.    Factual Background

Much of the factual background of this case is entirely undisputed. These undisputed, and well-pleaded, facts reveal the following.

The Plaintiff, Joseph Farmer, is a convicted rapist. "On December 11, 1981, Joseph W. Farmer, . . ., was arrested and charged with Aggravated Assault, Unlawful Restraint, and Rape, of a co-worker, . . ., on the evening of December 10, 1981. A jury found Mr. Farmer guilty of these offenses on May 10, 1982, and on January 24, 1983, he was sentenced to an aggregate term of 13 ½ to 32 years imprisonment." Farmer v. DiGuglielmo, No. 05-6383, 2007 WL 1276948, *1 (E.D.Pa. May 1, 2007).

Farmer is also a criminal recidivist, and a previously convicted sex-offender, who was described by parole officials in 1996 as an "habitual offender," a "poor risk for parole [due to a] second conviction for sex offense," and an inmate with a "very high assaultive behavior potential." (Doc. 30-2, p.7.)

Despite his history of serial, habitual violent sexual offenses, Farmer remains completely unrepentant for his crimes. Indeed, as recently as 2007, Farmer asserted that he was "actually innocent" of this rape which led in his current incarceration, while acknowledging that he engaged in sexual intercourse with his victim, a position that the United States District Court for the Eastern District of Pennsylvania aptly described as "illogical." Farmer v. DiGuglielmo, No. 05-6383, 2007 WL 1276948, *4 (E.D.Pa. May 1, 2007).

Finally, Farmer also is an inmate who, by his own admission, continues to refuse to participate in sex offender treatment and after-care after more than twenty years in prison serving a sentence for his second sex offense. (Doc.21, Ex.B.)

It is against the backdrop of these undisputed facts, that Farmer brings the instant lawsuit, a lawsuit which claims that the failure of parole officials to grant early, favorable release to a criminal recidivist sexual offender, who refuses treatment, denies culpability, and possesses a very high potential for future assaultive behavior violates his constitutional rights.

## B.    Procedural History

Farmer initially commenced this lawsuit by filing a *pro se* complaint on January 27, 2009. (Doc. 1.) In his initial *pro se* pleading, Farmer named the head of the state parole board, the chairman of the Pennsylvania Commission on Crime and Delinquency,  the state commissioner of corrections and their staffs as Defendants. (Id.) Farmer then alleged that these Defendants had violated his rights by denying him parole through an *ex post facto* application of revised state parole laws enacted in 1996. (Id.) While Farmer claimed that he was the victim of an *ex post facto* application of this 1996 state parole statute, oddly he alleged that these violations began in 1995, on year prior to enactment of this statute.(Id., p.3-C.) Moreover, Farmer alleged that the parole hearings he was challenging occurred "at SCI-Graterford  between 1995 and 2008." (Id., p.3-C.) Thus, Farmer's 2009 complaint was based upon events which he admitted began 14 years earlier, in 1995. Farmer sought relief for these alleged constitutional infractions in the form of damages totaling $13,500,000 and an immediate parole hearing to secure his release. (Id.)

This district court, McClure, J., initially construed Farmer's pleadings as a petition for a writ of habeas corpus, and dismissed the complaint on an initial screening pursuant to 28 U.S.C. §1915, without prejudice to Farmer filing a properly documented petition for writ of habeas corpus. (Doc. 8.) Farmer appealed this

screening order to the United States Court of Appeals for the Third Circuit, (Doc. 10), which entered an opinion and order remanding the case to the district court for further proceedings on January 4, 2010. (Doc. 19.)

This ruling by the court of appeals permitted Farmer to file an amended complaint in this case, since the appellate court concluded that Farmer had, in fact, attempted to bring a claim for damages and injunctive relief under 42 U.S.C. §1983. (Id.) However, notably absent from the court of appeals' ruling was any suggestion that Farmer's claims could survive a properly submitted motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Id.) Indeed, the court of appeals specifically stated that: "we express no opinion on whether [Farmer's complaint] states a claim upon which relief may be granted." (Id., p.6.)

Consistent with the mandate of the court of appeals, Farmer was given leave to file an amended complaint. (Doc. 20.) Farmer filed this amended complaint on January 26, 2010. (Doc. 21.) Farmer's amended complaint is a 41-page pleading, which acknowledges that Farmer– a convicted rapist with a prior criminal record for sex offenses–refused to undergo sex offender therapy or treatment as recently as 2007. (Id., Ex. B.) Despite this acknowledgment Farmer lodged a civil rights complaint against 20 state officials in this amended complaint. These Defendants

include ten current and former members of the Pennsylvania Board of Probation and Parole.[1]

In addition, Farmer named the current and former chairman of the Pennsylvania Commission on Crime and Delinquency, along with current and former members of that commission, as additional Defendants.[2] Farmer's amended complaint does not allege that these Defendants played any direct role in his parole denials. Rather, Farmer simply names these agency personnel as Defendants because the Pennsylvania Commission on Crime and Delinquency oversees state and federal grants which fund parole programs. (Id.)

Further, Farmer's complaint named two former secretaries of corrections, and five state prison wardens as Defendants.[3] Once again, Farmer's amended complaint does not allege that these supervisory prison officials played any role in his parole adjudications, the gravamen of his lawsuit. Instead, he simply seeks to hold them liable on some sort of *respondeat superior* theory of vicarious liability, stating that

---

[1]Catherine McVey, Benjamin Martinez, Michael Webster, Barbara Descher, Richard Kipp, William Ward, Sean Ryan, Nicholas Muller, Gary Lucht and Allen Castor.

[2]These individual Defendants include Walter Phillips and James Thomas, along with various other state corrections, parole and victim advocacy officials.

[3]These corrections Defendants include former corrections secretaries Jeffrey Beard and Martin Horn, along with wardens Jerome Walsh, Donald Vaughn, David Diguglielmo, James Wynder and Michael Klopotoski.

they are collectively "responsible for the operation of their facilities and welfare of all inmates within their facilities." (Id., p.4.)

Finally, Farmer names the state victim advocate, Carol Lavery, as a Defendant. Farmer's articulated basis for suing Ms. Lavery is the performance of her public duty, advocating on behalf of crime victims, including the victim of Farmer's rape. (Id.) Thus, Farmer protests in his complaint that Ms. Lavery, as victim advocate, "represent[s] victims of crime" in parole proceedings. (Id., p.4.)

After naming these twenty officials as Defendants, Farmer's amended complaint then contains virtually no factual averments relating to any of these persons that he seeks to hold individually liable for $13,500,000 in damages. Indeed, sixteen of these Defendants are never referred to by Farmer in his complaint, beyond being summarily listed in the caption of the case, and the remaining four Defendants receive only passing references in the body of Farmer's complaint. (Id.) Instead of articulating grounds for individual liability, Farmer simply asserts that the Defendants have collectively deprived him of his right to early release on parole through an *ex post facto* application of Pennsylvania's 1996 amended parole laws to his case. (Id.) Yet while this claim that state officials have improperly applied the 1996 state parole statute to his case in an *ex post facto* fashion remains the gist of Farmer's lawsuit, curiously Farmer continues to insist that these officials began violating his rights in 1995, *prior* to the enactment of these state parole laws. (Id., p.4.)

Farmer's amended complaint was served upon the Defendants, (Doc. 31), who have now moved to dismiss the complaint for failure to state a claim upon which relief can be granted. (Doc. 29.) This motion has been fully briefed by the parties, (Docs. 30, 36, 46 and 49) and is now ripe for resolution.

For the reasons set forth below, it is recommended that the motion to dismiss be granted.

## II.    Discussion

### A.    Rule 12(b)(6)– The Legal Standard.

The Defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). This Court, in turn, has an independent statutory obligation to conduct a review of *pro se* complaints which seek redress against government officials.  Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a  prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light

most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

Applying this standard, we recommend that Farmer's complaint be dismissed. Despite receiving leave to amend his complaint, Farmer's current amended complaint

remains fundamentally flawed in ways which cannot be corrected. Therefore, for the reasons set forth below, the amended complaint should be dismissed.

**B.** **Farmer's Amended Complaint Fails to Allege Personal Involvement By The Named Defendants in Any Unlawful Acts**

At the outset, Framer's amended complaint fails because it does not meet the basic requisites for a civil rights complaint. It does not adequately allege any personal involvement by any individual Defendant in actions which deprived Farmer of some rights guaranteed by the constitution or laws of the United States.

To state a claim under §1983, the Plaintiff must show that the Defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; <u>Morse v. Lower Merion School Dist</u>., 132 F.3d 902 (3d Cir. 1997); <u>see also</u> <u>Maine v. Thiboutot</u>, 448 U.S. 1 (1980). Liability under § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to supervisory government officials it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d

1195, 1207 (3d Cir.1988).

<u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).

These basic principles of liability, in turn, define for us what a §1983 complaint

must allege in this context:

> For a § 1983 claim to survive a motion to dismiss, a plaintiff must allege
> that each and every defendant was personally involved in the purported
> wrongdoing. <u>Evancho</u>, 423 F.3d at 353. A defendant's personal
> involvement in a constitutional violation may be established via
> allegations of "personal direction," "actual knowledge and
> acquiescence," or "direct discrimination." <u>Id</u>.; <u>see also Andrews v. City
> of Phila.</u>, 895 F.2d 1469, 1478 (3d Cir.1990). This court has described
> the specificity required of a plaintiff's allegations as follows:
>
>> [A]llegations are sufficient to survive a motion to dismiss
>> when they name the individuals responsible, the conduct,
>> the time, and the place of the incident that deprived a
>> plaintiff of his civil rights. Conversely, alleging a mere
>> hypothesis that an individual defendant had personal
>> knowledge or involvement in depriving the plaintiff of his
>> rights is insufficient. Accordingly, a § 1983 complaint must
>> be dismissed when it fails to contain even a remote
>> suggestion that a supervisory defendant had
>> contemporaneous, personal knowledge of the alleged harm
>> and acquiesced in it. <u>Ozoroski v. Maue</u>, Civ. A. No. 1:08-
>> CV-0082, 2009 WL 414272, at *10 (M.D.Pa. Feb. 18,
>> 2009) (quoting <u>Kirk v. Roan,</u> 1:04-CV-1990, 2006 WL
>> 2645154, at *3 (M.D.Pa. Sept.14, 2006), <u>Evanch</u>o, 423
>> F.3d at 353, and <u>Rode v. Dellarciprete</u>, 845 F.2d 1195,
>> 1207 (3d Cir.1988)).

<u>McCartney v. Pennsylvania State Police</u>, No. 09-1817, 2010 WL 2196429, *4

(M.D.Pa. May 27, 2010).

Applying these constitutional benchmarks to this complaint, it is apparent that, Farmer's amended complaint fails to state a claim upon which relief can be granted. Indeed, as to these Defendants Farmer's amended complaint fails for several reasons.

First, as to at least sixteen Defendants, the complaint violates the pleadings rules prescribed by the United States Supreme Court in <u>Ashcroft v. Iqbal</u>, __U.S. __, 129 S.Ct. 1937 (2009) in that it only contains "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id</u>. at 1949. In fact, as to these sixteen Defendants, the amended complaint does not even contain "[t]hreadbare recitals of the elements of a cause of action." Rather, these sixteen Defendants are not mentioned anywhere in the body of the amended complaint beyond being listed in the caption of this case. (Doc. 21.) This complete failure to articulate in the complaint a basis for holding these correctional staff accountable for some violation of the constitution now compels dismissal of these Defendants from this lawsuit. <u>See</u> <u>Thomas v. Conway</u>, No. 04-1137, 2005 WL 2030304 (M.D. Pa. July 21, 2005)(failure to name defendant in body of complaint compels dismissal)[4].

---

[4] These Defendants, who are not named in any factual recitals in Farmer's amended complaint include the following Defendants: Catherine McVey, Benjamin Martinez, Michael Webster, Barbara Descher, Richard Kipp, Sean Ryan, Nicholas Muller, Gary Lucht, Allen Castor, Walter Phillips, Carol Lavery, Jeffrey Beard, Jerome Walsh, Donald Vaughn, David Diguglielmo, and James Wynder.

As for the remaining four Defendants–Martin Horn, Michael Klopotoski, James Thomas and William Ward–while Farmer's amended complaint may contain some "[t]hreadbare recitals of the elements of a cause of action", these cursory allegations do not meet the standards of pleading required in federal court since they fail to "name the individuals responsible, the conduct, the time, and the place of the incident that deprived a plaintiff of his civil rights." McCartney v. Pennsylvania State Police, No. 09-1817, 2010 WL 2196429, *4 (M.D.Pa. May 27, 2010)(citations omitted). Therefore, as to these Defendants, without the inclusion of some further well-pleaded factual allegations, the assertions set forth in these pleadings are nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice." Iqbal, 127 S.Ct. at 1979. Accordingly, these individual Defendants are entitled to be dismissed from this action.

The facial inadequacies of these claims against the twenty individual Defendants named by Farmer are further underscored in several other ways. For example, the gravamen of Farmer's complaint involves actions of the parole board. Yet, Farmer names officials in the Department of Corrections, and the Pennsylvania Commission on Crime and Delinquency as Defendants. Since there is no legal, factual

or logical nexus between these Defendants and the parole board's actions, these Defendants are all entitled to be dismissed from this case.[5]

Moreover, Farmer's allegations against the state victim advocate, Carol Lavery, are particularly bankrupt. Farmer sues Ms. Lavery for performing her public duty, advocating on behalf of crime victims, including the victim of Farmer's rape. (Doc. 21.) Protecting the rights of victims of violent sexual assaults plainly is not conduct which violates any rights guaranteed by the Constitution or laws of the United States. Therefore, the actions of Ms. Lavery advocating for crime victims simply cannot give rise to liability under §1983.

Finally, the selection of Defendants in Farmer's amended complaint runs afoul of one other settled legal tenet. Almost without exception, Farmer premises the individual liability of these government officials solely upon their supervisory responsibilities in various state agencies. This he cannot do. Such allegations, which are in essence nothing more than an assertion of *respondeat superior* liability, have been expressly rejected by the courts, which have held that supervisory government officials names in a civil rights action must have personal involvement in the alleged wrongdoing. Thus, liability cannot be predicated solely on the operation of

---

[5]These Defendants include the following officials of the Pennsylvania Commission on Crime and Delinquency--Walter Phillips and James Thomas– as well as the following corrections officials--Jeffrey Beard, Martin Horn, Jerome Walsh, Donald Vaughn, David Diguglielmo, Michael Klopotoski and James Wynder

*respondeat superior*. Instead, personal involvement must be demonstrated. Such personal involvement can only be shown through allegations of personal direction or of actual knowledge and acquiescence in wrongdoing. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Since Farmer's amended complaint fails to allege personal involvement in some specific acts of wrongdoing by any of the individual Defendants named in the complaint, these allegations fail as a matter of law and should be dismissed.

### C.    Many of The Allegations in the Complaint Are Time-Barred

In addition, many of the allegations set forth in the complaint are barred by the applicable statute of limitations. Fairly construed, Framer's amended complaint protests a series of parole denial decision between 1995 and 2008. It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S.A. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations. For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)). See also Lake v. Arnold,  232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991).In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)). The

consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001)

While he protests parole decisions reaching back to 1995, Farmer did not file this complaint until January 2009. Therefore, a straightforward application of the statute of limitations here compels the dismissal of all claims which pre-date January 2007, since those claims are now time-barred. On these undisputed facts, recited by Farmer in his amended complaint, the bar of the statute of limitations clearly applies. Claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions, Wilson v. Garcia, 471 U.S. 261, 266-67 (1985), which in Pennsylvania is a two- year limitations period. 42 Pa.C.S.A. § 5524.

Farmer cannot save these time-barred claims by resort to the continuing violation theory since that tolling doctrine "will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998). Indeed, with respect to the controlling consideration relating to this equitable tolling doctrine, "the degree of permanence [of the injury, i.e.]-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his rights," Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001), Farmer's

amended complaint speaks unambiguously to this issue when he alleges violations of his rights in parole hearing beginning in 1995. (Doc. 21.) In light of this admission by Farmer, the Plaintiff plainly was on notice of his injury long before he filed this complaint, and the permanence of this injury was clearly known to him long before he filed this action. Therefore, there are no grounds for tolling the statute of limitations beyond 2007 on a continuing offense theory, and those claims which pre-date January 2007 should be barred by the statute of limitations.

### D.  Farmer's Constitutional Claims Fail on Their Merits

Finally, and most fundamentally, we find that Farmer's constitutional claims fail on their merits. At the outset, in assessing whether Farmer's complaint sets forth a viable cause of action which can survive a motion to dismiss, we begin with the familiar proposition that "[t]he federal civil rights statute here at issue, 42 U.S.C. § 1983, "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 145 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). [Therefore] [t]o establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir.1998)." Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005).

Here, the gist of Farmer's complaint is that prison officials denied him his right to due process through their *ex post facto* application of Pennsylvania's 1996 parole laws to his case. Farmer, however, advances this claim in the context of parole decisions that denied early favorable parole release to Farmer because he was a criminal recidivist sexual offender, who refused treatment, denied culpability, and possessed a very high potential for future assaultive behavior. On these facts, it is clear that Farmer cannot state an *ex post facto* clause claim which would entitle him to relief.

1.      **Farmer's *Ex Post Facto* Clause Claims Fail**

Farmer faces a specific and compelling burden when advancing an *ex post facto* clause challenge to state parole decisions. The *ex post facto* clause of the United States Constitution generally "prohibits Congress and the states from enacting any law that 'imposes a punishment for an act which is not punishable at the time it was committed; or imposes additional punishment to that then prescribed . . . .'" (citation omitted). Artez v. Mulcrone, 673 F.2d 1169, 1171 (10th Cir. 1982). In Collins v. Youngblood, 497 U.S. 37 (1990), the Supreme Court explained that to be *ex post facto*, a law must either punish as a crime an act previously committed which was innocent when done; make more burdensome the punishment for a crime after its commission; or, deprive one charged with a crime of any defense that was available when the act was committed. Youngblood, 497 U.S. at 52. As the Court explained in

California Depart. of Corrections v. Morales, 541 U.S. 499 (1995), the clause is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" Morales, 541 U.S. at 504. Thus:

> [T]he focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' nor ... on whether an amendment affects a prisoner's '*opportunity* to take advantage of provisions for early release,'... but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.

> Morales, 541 U.S. at 506, n.3 (emphasis original)

By eschewing an *ex post facto* analysis which focuses on some ambiguous or theoretical sort of disadvantage, the Supreme Court has formulated in the field of parole revocations an *ex post facto* standard that examines whether the retroactive application of change in a parole regulation creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes" for the particular inmate challenging the law. Garner v. Jones, 529 U.S. 244, 250 (2000) The petitioner bears the burden on this issue: he "must show that *as applied to his own sentence* the law created a significant risk of increasing his punishment." Garner, 529 U.S. at 255 (emphasis added). Therefore, a petitioner who challenges parole decisions on *ex post facto* grounds has the heavy burden of showing that, when applied to his case, the use of these guidelines significantly risked an increase in his punishment in violation of the *ex post facto* clause. See Blair-Bey v. Quick, 159 F.3d 591, 592 (D.C. Cir. 1998); Richardson v. Pennsylvania Board of Probation and Parole, 423 F.3d 282, 288 (3d

Cir. 2005) ("[A] 'speculative and attenuated possibility. . . of increasing the measure of punishment' is not enough.")(quoting <u>California Dep't of Corrections v. Morales</u>, 514 U.S. 499, 509 (1995).

These principles apply with particular force to *ex post facto* claims made by sexual criminal recidivists like Farmer, who contest the state parole board's judgment that they present a continuing risk of sexually predatory conduct. With respect to such offenders, the guiding legal standards can be simply stated:

> The Ex Post Facto Clause states that "[n]o State shall ... pass any ... ex post facto Law." U.S. Const. art. I, § 10, cl.1. The Clause applies to a statute or policy change which "alters the definition of criminal conduct or increases the penalty by which a crime is punishable."The ex post facto inquiry has two prongs: (1) whether there was a change in the law or policy which has been given retrospective effect, and (2) whether the offender was disadvantaged by the change. To violate the Ex Post Facto Clause, a retroactive change in the law or policy must create a "sufficient risk of increasing the measure of punishment attached to the covered crimes"; a "speculative and attenuated possibility of ... increasing the measure of punishment" is not enough.

<u>Richardson v. Pa. Bd. of Probation and Parole</u>, 423 F.3d 282, 287-88 (3d. Cir. 2005)(citations omitted).

In 1996 Pennsylvania amended its parole laws in a fashion which created a substantive shift in emphasis, placing greater significance on public safety considerations in making parole decisions. This policy change inspired considerable litigation by state inmates eligible for parole at the time of this change in the law, inmates whose parole eligibility might have been significantly altered by this change in the law. These prisoners challenged the application of the new parole law through

habeas corpus petitions, and in a series of rulings the United States Court of Appeals for the Third Circuit held that, in certain very limited circumstances, application of the 1996 state parole amendments may implicate constitutional *ex post facto* concerns. See, e.g., Richardson v. Pa. Bd. of Probation and Parole , supra; Mickens-Thomas v. Vaughn, 321 F.3d 374 (3d Cir. 2003). However, since proof of an *ex post facto* violation requires both proof of a change in the law, and evidence that "the offender was disadvantaged by the change," Richardson v. Pa. Bd. of Probation and Parole , 423 F.3d at 287-88, to sustain such a claim Farmer must show that this change in the law, retroactively applied to him, created an "individualized disadvantage" for the plaintiff in securing parole. Richardson v. Pa. Bd. of Probation and Parole, supra; Yeckel v. Commonwealth of Pennsylvania, No. 05-839, 2006 WL 891461, *4 (W.D. Pa., March 29, 2006).

To meet this burden Farmer must make an exacting showing. As the United States Court of Appeals for the Third Circuit has held when rejecting a similar claim by a state inmate who, like Farmer, was a convicted sexual predator, a Plaintiff advancing an *ex post facto* claim must present some evidence that the new law disadvantaged him. As the Court explained "[t]he mere intuition that stricter standards are more likely to lead to an adverse result is insufficient. Rather, [a petitioner] must provide such evidence as indications that he would have been a good candidate for parole under the old law, . . . , and the extent to which the reasons given for denying him parole would not have been considered before 1996." Taylor

v. Pa. Board of Probation and Parole, 181 F.App'x, 253, 254-255 (3d Cir. 2006); See Shaffer v. Meyers, 163 F. Appx. 111 (3d Cir. 2006). See also Sheffield v. Pa. Department of Corrections, No. 07-2046, 2009 U.S. Dist. LEXIS 5110, at *6 (M.D. Pa. January 26, 2009).

Nor can a state inmate like Farmer premise a constitutional *ex post facto* clause claim on the assertion that the Board's decision to deny him parole, based upon his failure to comply with sex offender treatment in prison, violates the constitution. Indeed, this precise argument has already been expressly rejected by the United States Court of Appeals for the Third Circuit, which has held that:

> [The parole board] had the ability to, and did, deny parole to some inmates who failed to undergo sexual offender treatment prior to the passage of [the 1996 state parole law,] § 9718.1. Further, the Parole Board has wide discretion to make decisions regarding parole based on a variety of factors. Although the Board cited [the petitioner's] failure to complete additional sexual offender programs as a factor in denying him parole (though it never referenced § 9718. 1), [an inmate's] successful completion of an advanced sexual offender program was one of many factors the Board could consider in evaluating his parole applications.
>
> * * * * * * * * * * * * * * * * * * * * * * * *
>
> Thus, even absent § 9718.1, the Parole Board was free to reject [a prisoner's] application for parole due to his failure to complete a recommended program . . . . Even were we to assume that the Parole Board did apply § 9718.1 to [a petitioner], his argument still fails because he cannot meet the second factor under Richardson, requiring him to show that he "was disadvantaged by the change" in law.[The petitioner] carries "the ultimate burden of establishing that the measure of punishment itself has changed,", and he "must show that as applied to his own sentence the law created a significant risk of increasing his punishment."[Here the petitioner] argues that although the Parole Board

did not explicitly cite § 9718.1, it clearly applied it in denying him parole, and that its retroactive application directly resulted in his increased punishment because "but for the statute ..., he would not have been required to take a sex offender program." But "a 'speculative and attenuated possibility of ... increasing the measure of punishment' is not enough" of a showing to meet [a petitioner's] burden.

Pleaze v. Klem, 335 F.App'x 168, 171-72 (3d Cir. 2009).

Applying these standards, courts have consistently rejected efforts by unrepentant sexual offenders to use the Constitution's *ex post facto* clause as a means of securing early release on parole. Pleaze v. Klem, 335 F.App'x 168, 171-72 (3d Cir.2009); Taylor v. Pa. Board of Probation and Parole, 181 F.App'x, 253, 254-255 (3d.Cir. 2006); Barrett v. Bretton, No. 08-117, 2010 WL 330250 (W.D. Pa. Jan. 11, 2010); Sheffield v. Pa. Dep't of Corrections, No. 07-2046, 2009 WL 210490 (M.D. Pa. Jan. 26, 2009); Trivit v. Klem, No. 07-883, 2008 WL 4616800 (M.D. Pa. Oct. 16, 2008); Smythe v. Diguglielmo, No. 05-5869, 2007 WL 2972586 (E.D. Pa. Oct. 10, 2007).

These principles are fully applicable here, and are fatal to Farmer's *ex post facto* claim, since it is evident that the denial of Farmer's parole is not a function of changes in the law, but rather is a product of Farmer's recidivism, and the parole board determination that Farmer was an unrepentant rapist, an "habitual offender," a "poor risk for parole [due to a] second conviction for sex offense," and an inmate with a "very high assaultive behavior potential." (Doc. 30-2, p.7.) Since Farmer cannot show that the change in the law created an "individualized disadvantage" for

the plaintiff in securing parole, Richardson v. Pa. Bd. of Probation and Parole, supra; Yeckel v. Commonwealth of Pennsylvania, No. 05-839, 2006 WL 891461, *4 (W.D. Pa., March 29, 2006), this *ex post facto* clause claim fails.[6]

### 2. Farmer's Amended Complaint Does Not State A Valid Due Process Claim

Nor does Farmer state a valid due process claim in his amended complaint. In this regard, Farmer simply errs when he suggests that he might have some substantive right to parole. Indeed, federal courts have routinely rejected suggestions by state prisoners that discretionary parole denials offend due process. See, e.g., Williams v. Pa. Bd. of Probation and Parole, No. 07-3158, 2008 WL 5120773 (E.D. Pa. Oct. 31, 2008); Walls v. Attorney General, No. 06-1598, 2007 WL 4190790 (W.D. Pa. Nov. 26, 2007); Zuniga v. Pa. Bd. of Probation and Parole, No. 05-5517, 2007 WL 1002179 (E.D. Pa. March 29, 2007); Anderson v. Pa. Bd. of Probation and Parole, No. 05-00163, 2006 WL 1149233 (M.D. Pa. April 26, 2006); Bonsall v. Gillis, 372 F.Supp. 2d 805 (M.D. Pa. 2005); Bachman v. Jeffries, 488 F.Supp. 107 (M.D. Pa. 1980).

---

[6]Indeed, we note that Farmer's amended complaint alleges facts which rebut any *ex post facto* claim, since Farmer admits that he was denied parole prior to the enactment of Pennsylvania's revised parole laws in 1996. (Doc. 21, p.4.) These parole denials, which pre-date the 1996 amendments to Pennsylvania's parole laws, show that farmer cannot prove one of the essential element of an *ex post facto* claim; namely, "that he would have been a good candidate for parole under the old law, . . . ." Taylor v. Pa. Board of Probation and Parole, 181 F.App'x, 253, 254-255 (3d Cir. 2006).

These cases are grounded upon several basic tenets of constitutional law. At the outset, these cases acknowledge that it is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979); see also Rauso v. Vaughn, 79 F. Supp. 2d 550, 551 (E.D. Pa.2000)(the federal constitution does not create an entitlement to parole).These cases all further recognize that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled. Burkett v. Love, 89 F.3d 135, 139 (3d Cir.1996); Rodgers v. Parole Agent SCI-Frackville, 916 F. Supp. 474, 476-77 (E.D. Pa. 1996); McCrery v. Mark, 823 F.Supp. 288, 294 (E.D. Pa. 1993). Rather, as the Pennsylvania Supreme Court has aptly noted, under state law: "It is undisputed that [an inmate] does not have a clear legal right to the grant of parole, nor does the board have a corresponding duty to grant the same." Coady v. Vaughn, 770 A.2d 287, 289(2001); see also Rogers v. Pa. Bd. of Probation and Parole, 724 A.2d 319, 323 (Pa. 1999).

Since a discretionary decision of the Parole Board denying an inmate early parole does not implicate any constitutionally protected liberty interest, the scope of federal judicial review of these decisions is necessarily quite limited. In the absence of a specific, articulated constitutional right to parole, the role of this Court in reviewing a state parole denial has been defined by the United States Court of Appeals for the Third Circuit in the following terms: "[E]ven if a state statute does

not give rise to a liberty interest in parole release under Greenholtz, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." Block v. Potter, 631 F.2d 233, 236 (3d Cir.1980); Bonsall v. Gillis, 372 F.Supp.2d 805, 807 (M.D. Pa. 2005)(quoting Block). However, when ensuring that state parole denials are not motivated by arbitrary or constitutionally impermissible reasons, it is clear that "federal courts, . . . are not to 'second-guess parole boards', and the requirements of substantive due process are met if there is some basis for the challenged decision." Hunterson v. DiSabato, 308 F.3d 236, 246 (3d Cir. 2002). See also Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001)(held, federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision). Moreover, the "relevant level of arbitrariness required to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.'" Hunterson, 308 F.3d at 247.

Judged against this deferential standard, it cannot be said that Farmer's complaint that he was not given the more favorable parole consideration states a claim which shocks the conscience or is sufficiently egregious to be characterized as arbitrary and capricious. These parole denial decisions rested on the immutable fact that Farmer is a violent sexual predator, a rapist and recidivist, who was an "habitual

offender," a "poor risk for parole [due to a] second conviction for sex offense," and an inmate with a "very high assaultive behavior potential." (Doc. 30-2, p.7.) Given the factors cited in the pleadings as the expressed grounds for denial of his parole, these Parole Board judgments appear to represent a careful, informed balancing of the interests of both the inmate and society. They were, therefore, the very essence of informed, discretionary decision-making which is the duty and responsibility of the Parole Board. Since nothing in these Parole Board decisions offends constitutional due process considerations, this due process claim fails on its merits.

We recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, we provided the Plaintiff with an opportunity to amend these pleadings, but to no avail. The current complaint still fails to state a viable civil rights cause of action. Since the Plaintiff has been afforded the opportunity to correct the deficiencies identified in the original complaint, has failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of the complaint make it clear that he has no right to relief, granting further leave to amend would be futile or result in

undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the complaint be dismissed without further leave to amend.

### III.　Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the motion to dismiss (Doc. 21) be granted and the Plaintiff's complaint be dismissed for the failure to state a claim upon which relief can be granted.

The Plaintiff is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 24th day of January, 2011.

**_S/Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge